## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROHM AND HAAS COMPANY,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **UNITED STEEL, PAPER AND** | : | |
| **FORESTRY, RUBBER,** | : | |
| **MANUFACTURING, ENERGY,** | : | |
| **ALLIED INDUSTRIAL AND** | : | |
| **SERVICE WORKERS** | : | |
| **INTERNATIONAL UNION,** | : | |
| **AFL-CIO-CLC, et al.,** | : | **No. 10-2845** |
| **Defendants.** | : | |

## MEMORANDUM

**Schiller, J.**                                                                      **February 18, 2011**

Plaintiff Rohm and Haas Company ("Rohm and Haas") seeks to vacate an arbitration award in favor of an employee and member of Defendant United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Service Workers International Union, and Defendant United Steelworkers Local 88 G (collectively, "the Union"). After Rohm and Haas terminated the employee, Greg Sailor, for alleged threatening behavior, the Union filed a grievance that was submitted to arbitration under a collective bargaining agreement ("CBA") between Rohm and Haas and the Union. After the arbitrator modified Sailor's penalty to a sixty-day suspension, Rohm and Haas filed this action to vacate the arbitration award. The Union subsequently filed a counterclaim to confirm the award. Currently before the court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court will grant the Union's motion, deny Rohm and Haas's motion, and confirm the arbitration award.

## I.    BACKGROUND

### A.    Sailor's Termination

Sailor worked for Rohm and Haas at a waste water treatment plant in Bristol, Pennsylvania. Nirav Panchal, an engineer, was Sailor's supervisor. (Compl. Ex. A [Arbitration Opinion and Award dated May 15, 2010 (Arb. Award)] 4.)  On March 2, 2009, Bob Clark, a private contractor and a friend of Sailor's, raised safety concerns with Panchal about a piece of rebar sticking up in the yard at the plant.  According to Sailor, Panchal was "dismissive" of Clark's concerns.  (*Id.* at 6-7.)  On March 4, 2009,  Sailor told Panchal that Clark was "angry and offended" at the way that Panchal had treated him.  (*Id.* at 7.)  According to Rohm and Haas, Sailor said to Panchal, "let me give you some advice, you piss people off and you should treat people better.  All the criminals are not in jail yet." (*Id.*)  Rohm and Haas further alleged that Sailor said to Panchal that Clark "has some fucked up friends and that people get run over every day in here."  (*Id.*)  Panchal felt threatened by these comments and reported them to his supervisor, Jeff Millman.  (*Id.* at 8.)  After a series of discussions with Sailor, Panchal, and various human resources officials, Rohm and Haas terminated Sailor on March 20, 2009.  (*Id.* at 10.)  Rohm and Haas issued a discharge report on that day indicating that it had terminated Sailor for violating Bristol Site Rules 15 and 21, which prohibit "using abusive, threatening, and obscene language," and "harassment . . or any behavior that threatens the safety or well being of another employee," respectively.  (*Id.* at 4-5.)

Rohm and Haas amended the March 20 discharge report on August 21, 2009 to include additional allegations of misconduct uncovered during the course of arbitration proceedings.  (*Id.* at 5-6.)  According to Robert Derr, another plant employee, Sailor  privately met with Derr on March 9, 2009.  At the meeting, Sailor produced a knife, and said that "he had some fucked up friends that

could take care of Panchal." Sailor also called Panchal an "Indian boy." (*Id.* at 14.) Based on these new allegations, Rohm and Haas's amended discharge report charged Sailor with violating Bristol Site Rule 17, which prohibits conduct that threatens to harm another employee. (*Id.* at 5-6.)

**B.     The Collective Bargaining Agreement and the Arbitration Award**

The Union is the collective bargaining representative of Sailor, who worked for Rohm and Haas for thirty years before he was terminated. (Arb. Award 4.) Rohm and Haas and the Union entered into the CBA on May 7, 2007, which is scheduled to remain in effect through May 2, 2011. (Compl. Ex. B [CBA] 1.) Article V of the CBA provides for grievance and arbitration procedures, covering "questions arising under [the CBA] as involve wages . . . hours of employment . . . and working conditions which any employee may desire to discuss with [Rohm and Haas]." (*Id.* at 4-5.) The CBA further provides that when a grievance is submitted to arbitration, the arbitrator's decision "shall be final and binding on both parties." (*Id.* at 8.) Under the CBA, "no employee will be suspended or discharged without just cause." (*Id.* at 6.)

The Union filed a grievance based on Sailor's termination, and on August 27, 2009, an arbitration hearing was held before Arbitrator James W. Mastriani. The issue submitted to the arbitrator was: "Did [Rohm and Haas] have just cause to terminate Greg Sailor? If not, what shall the remedy be?" (Arb. Award 2.) At the hearing, the parties presented worksite rules, company policies, and testimony from Sailor and the employees who witnessed the incidents. (*Id.*) The arbitrator concluded that Sailor had made inappropriate comments, but that Rohm and Haas did not have just cause to terminate him. (*Id.* at 23.) With regard to the March 4 incident, the arbitrator explained:

I do not find that the Grievant's comments constituted an intent to threaten Panchal with physical harm. The Grievant had not been disciplined for engaging in threatening or violent behavior during his more than thirty (30) years of service. This would not insulate him from discharge upon such a showing in this matter, but the record simply does not support the Company's conclusion that the Grievant's conduct on March 4, 2009 constituted threats of violence or statements of intent to do so. The Grievant's comments, while inappropriate, referred to possible conduct by others in connection with an incident that involved Panchal and Clark and did not relate to a confrontation with Panchal over Panchal's supervision of himself, his work or any other portion of the Grievant's relationship with Panchal. The Grievant acknowledged portions of the comments attributed to him. While he denied others, his statements, even if true, have not been shown to constitute threats of violence or credible intentions to do so.

(Arb. Award 20-21.) With regard to the March 9 incident, the arbitrator concluded:

Derr's testimony does not alter my conclusion that the Company had just cause to discipline the Grievant but did not have just cause to terminate him. Neither Derr nor Panchal offered knowledge of the conversation between the Grievant and Derr until shortly before the arbitration hearing, some five to six months after it occurred. It is not reasonable to conclude that either Derr or Panchal believed that anything that the Grievant said to Derr in early to mid-March constituted a serious threat or an intent to commit an act of violence against Panchal. The fact the neither Derr nor Panchal reported the incident to the company and would not have done so in the absence of the Company's preparation for an arbitration several months after the incident, is an indication that the Grievant's conduct was not regarded by either party as constituting a serious threat.

(*Id.* at 23.) Based upon this consideration of the evidence, the arbitrator entered an award reinstating Sailor with back pay and converting his discipline to a sixty-day unpaid suspension. (*Id.* at 24.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The same standard applies when considering cross-motions for summary judgment. *Princeton Ins. Co. v. Converium*

*Reinsurance N. Am. Inc.,* 344 F. App'x 759, 761 (3d Cir. 2009). When the moving party does not

bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that

the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue

of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the

nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view

the facts in the light most favorable to the nonmoving party and draw all inferences in that party's

favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make

credibility determinations or weigh the evidence in making its determination. *See Reeves v.*

*Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293

F.3d 655, 665 (3d Cir. 2002).


III.     **DISCUSSION**

A.     **Judicial Review of Labor Arbitration Awards**

1.     *Generally*

Judicial review of arbitration awards made pursuant to a collective bargaining agreement is

very narrow; an award should only be set aside in rare instances. *Nat'l Ass'n of Letter Carriers v.*

*U.S. Postal Serv.,* 272 F.3d 182, 185 (3d Cir. 2001). "[A]s long as an honest arbitrator is even

arguably construing or applying the contract and acting within the scope of his authority, the fact that

a court is convinced he committed serious error does not suffice to overturn his decision." *E.*

*Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000). Therefore,

courts "have no business weighing the merits of the grievance, considering whether there is equity

in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960). However, an arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.* 484 U.S. 29, 38 (1987).

Limited judicial review of arbitration awards is proper because such awards are part of the "continuous collective bargaining process" between a union and an employer. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). When a union and an employer agree to be bound by an arbitrator's decision, the arbitrator's findings of fact and conclusions of law must be treated as if they represent "an agreement between [the employer] and the union as to the proper meaning of the contract's words." *E. Associated Coal Corp.,* 531 U.S. at 62. Accordingly, a party "should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." *Misco,* 484 U.S. at 37.

### 2. Public policy

Rohm and Haas's sole argument for vacating the award is that it violates public policy. A court may refuse to enforce an arbitrator's award because it is contrary to public policy as "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Id.* at 42. The "public policy exception" to the rule that courts should generally uphold labor arbitration awards is "narrow." *E. Associated Coal Corp.,* 531 U.S. at 63. Whether an award violates public policy is a question for the Court, not the arbitrator. *See Misco*, 484 U.S. at 42. A court's review "is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to

be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 43 (internal quotation marks and citation omitted). The question for the Court is not whether the employee's behavior violates public policy, but "whether the [award] to reinstate him does so." *E. Associated Coal Corp.* 531 U.S. at 62-63.

**B.     The Arbitration Award Does Not Violate Public Policy**

Rohm and Haas argues that the arbitration award violates the "public policy against threats of workplace violence" and the public policy "against harassment based on race/color/national origin." (Pl.'s Mot. for Summ. J. 12, 15.) Rohm and Haas indicates that it is not challenging the arbitrator's decision with respect to the March 4 incident, but rather "the absence of any discipline for the March 9 . . . racist threat of extreme violence," during which Sailor allegedly referred to Panchal as an "Indian boy" and pulled out a knife. (*Id.* at 18.) Rohm and Haas cites multiple sources that state that promoting workplace safety is a well-defined and entrenched public policy. *See, e.g., Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418 (Pa. 1968) (imposing a duty on an employer to control the conduct of an employee if the employer "knows or should know of the necessity and opportunity for exercising such control.") Similarly, Rohm and Haas is correct that case and statutory law demonstrate a clear public policy against employment discrimination and harassment. *See* 42 U.S.C. § 2000e-2 ("Title VII"); 43 Pa. Cons. Stat. § 955 (the Pennsylvania Human Relations Act). However, Rohm and Haas fails to establish that the arbitrator's reinstatement of Sailor would violate either public policy. *See E. Associated Coal Corp.*, 531 U.S. at 62-63.

With regard to the public policy against workplace violence, the Court is not free to disregard the arbitrator's factual finding that Sailor's behavior did not constitute a serious threat to others' safety. *See Misco*, 484 U.S. at 38. Rohm and Haas's repeated characterization of the March 9

incident as a "threat of extreme violence" is directly contrary to the arbitrator's conclusion that "[i]t is not reasonable to conclude that either Derr or Panchal believed that anything that [Sailor] said to Derr [on March 9] constituted a serious threat or an intent to commit an act of violence against Panchal." (Arbitration Award 23.) This factual finding forecloses vacating the arbitration award on the grounds of workplace safety. *See Misco*, 484 U.S. at 38.

With respect to the public policy against workplace discrimination and harassment, there is no support in the arbitrator's findings for Rohm and Haas's contention that the March 9 incident reflected "discriminatory animus." (Pl.'s Mot for Summ. J. 19.) The arbitrator considered Derr's testimony regarding the alleged "Indian boy" comment, but it did not "alter [his] conclusion that [Rohm and Haas] had just cause to discipline [Sailor] but it did not have just cause to terminate him." (Arb. Award 23.) Furthermore, even accepting that the arbitrator fully credited Derr's testimony that Sailor made the "Indian boy" comment and that it was racial in nature, reinstating Sailor despite this remark would not violate the public policy against workplace discrimination and harassment. While Rohm and Haas points to cases, statutes and regulations that indeed articulate this general policy against discrimination, there is no "well-defined and dominant" policy condemning these types of isolated remarks under federal or state law. *See E. Associated Coal Corp*. 531 U.S. at 62-63; *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 365 (3d Cir. 1993).

Title VII and the Pennsylvania Human Relations Act ("PHRA") provide a cause of action for employees aggrieved by a discriminatory and hostile work environment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (Title VII); *Phila. Housing Auth. v. Am. Fed'n of State, Cnty. and Mun. Emp.,* 956 A.2d 477, 484 (Pa. Commw. Ct. 2008) (PHRA). However, Title VII is not a "general civility code," and is not violated by "mere utterance of an [isolated] ethnic or racial epithet

which engenders offensive feelings in an employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (U.S. 1998); *see also Perry v. Harvey*, 332 F. App'x 728 (3d Cir. 2009) ("Accepting [Plaintiff's] requested inference that 'boy' was a racially motivated epithet, it does not rise above an offhanded comment or sporadic abusive language."); *Huggins v. Coatesville Area Sch. Dist.*, Civ. A. Nos. 07-4917, 09-1309, 2010 WL 4273317, at * 6 (E.D. Pa. Oct. 29, 2010) (holding that three discriminatory comments, including one referring to the African-American plaintiff as "boy," were insufficient to make out a prima facie case of a hostile work environment under Title VII). Here, the decision to reinstate Sailor after a single inappropriate remark does not contravene well-settled precedent interpreting Title VII. Rohm and Haas's argument that the arbitrator's decision is contrary to the same policy set forth in the PHRA is also unavailing because Pennsylvania courts interpret the PHRA consistently with Title VII. *See Brown v. J. Kaz, Inc.,* 581 F.3d 175, 180 n.1 (3d Cir. 2009).[1] Accordingly, the award is not contrary to the public policy against discriminatory workplace harassment.

IV.    CONCLUSION

For the reasons stated above, the arbitration award does not violate public policy. The Court will therefore deny Rohm and Haas's motion for summary judgment, grant the Union's motion, and confirm the arbitration award. An appropriate order will be docketed separately.

---

1. Rohm and Haas also cites various EEOC regulations pertaining to workplace harassment, but because those are promulgated under Title VII, they implicate the same policies. *See* 29 C.F.R § 1606.8.